**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARLOS ORTIZ PAGAN,** | : | |
| **Plaintiff** | : | **No. 1:23-cv-02010** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **ROXANNE MORTON, <u>et al.</u>,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Currently before the Court are Defendants' motion to dismiss pro se Plaintiff's amended complaint, Defendants' motions to strike or dismiss certain documents or portions of three (3) documents Plaintiff has filed after the filing of his amended complaint, and Plaintiff's motion for appointment of counsel. For the reasons stated below, the Court will (1) deny Defendants' motions to strike or dismiss certain documents Plaintiff filed after filing his amended complaint; (2) construe two (2) of the documents Plaintiff filed after he filed his amended complaint as motions to amend or supplement his amended complaint and deem them withdrawn due to Plaintiff's failure to file briefs in support of the motions in accordance with the Court's Local Rules; (3) deny in part and grant in part Defendants' motion to dismiss the amended complaint; (4) deny without prejudice Pagan's motion for appointment of counsel; (5) dismiss without prejudice some of Plaintiff's claims in the amended complaint pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B); and (6) permit Pagan leave to file a second amended complaint as to only the claims that the Court will dismiss without prejudice.

## I.    BACKGROUND

Pro se Plaintiff Carlos Ortiz Pagan ("Pagan") commenced this action by filing a complaint, application for leave to proceed <u>in forma pauperis</u> ("IFP Application"), and prisoner trust fund account statement, all of which the Clerk of Court docketed on December 5, 2023.

(Doc. Nos. 1–3.)  In the complaint, Pagan asserted claims against Defendant Roxanne Morton ("Morton"), who is alleged to be a correctional officer at the Dauphin County Prison ("DCP"). (Doc. No. 1 at 2, 4.)  Pagan alleged that (1) Morton instigated another inmate to physically assault Pagan on September 18, 2023, resulting in cuts to his face and nose; (2) Morton and this other inmate "verbally assault[ed]" him by using "racial [sic] abusive language directed to[ward him]"; and (3) Morton discriminated against him "based on [his] Hispanic origin and [his] sex charges."  See (id. at 4).  Based on these allegations, Pagan asserted claims under 42 U.S.C. § 1983 against Morton for violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution.  (Id. at 5.)  For relief, Pagan sought only monetary damages.  (Id. at 5.)

On December 22, 2023, Pagan filed a motion to amend his complaint.  (Doc. No. 6.) Less than a week later, the Court entered an Order which, inter alia, granted the IFP Application, granted Pagan's motion to amend his complaint, and informed Pagan that if he did not file an amended complaint within thirty (30) days, the case would proceed on his original complaint. (Doc. No. 7.)

Pagan did not file an amended complaint within thirty (30) days; instead, he filed a motion for the appointment of counsel (Doc. No. 8) as well as a series of documents over the next few months in which he attempted to add new claims, exhibits, and even a new defendant to his original complaint.  (Doc. Nos. 9–13, 16.)  These documents included: (1) a motion to supplement his complaint to add Section 1983 claims for First Amendment retaliation as well as Fourteenth Amendment due-process and equal-protection claims (Doc. No. 9); (2) a "Motion for [sic] Allowing Plaintiff to Present to this Honorable Court Copies of the Procedure of [sic] Plaintiff [sic] Process Inside the Prison" in which he sought to add copies of DCP paperwork he

filed or received relating to complaints he raised against Morton (Doc. No. 10); (3) a motion to add Joseph Sauble ("Sauble"), alleged to be a DCP internal affairs investigator, as a Defendant (Doc. No. 11); (4) a letter in which Pagan indicated he wanted to assert Section 1983 claims for monetary damages against Morton and Sauble in their official and individual capacities (Doc. No. 12); (5) a letter in which Pagan described events that occurred with Morton and Sauble in February 2024 (Doc. No. 13); and (6) a letter in which Pagan stated that he wanted the Court to consider all of these documents together (Doc. No. 16).

This Court entered an Order on March 15, 2024, denying Pagan's motion for appointment of counsel without prejudice. (Doc. No. 15.) Three (3) days later, the Court issued an Order granting Pagan's request to add information about what occurred with Sauble's investigation about Morton at the DCP. (Doc. No. 17.) The Court also provided Pagan with thirty (30) days to submit any supporting documentation to the Court. (Doc. No. 17) Instead of submitting this documentation, Pagan filed an amended complaint in which he asserted Section 1983 claims against Morton and Sauble. (Doc. No. 18.)

In the amended complaint, Pagan alleges that he was a state prisoner who was nevertheless incarcerated in DCP in September 2023. (Id. at 9–10.) He was placed in protective custody in DCP due to his "serious sex charged [sic]." See (id. at 10). While at DCP, Pagan "tr[ied] to avoid any time of [sic] problem or fight." See (id.).

Pagan avers that between the hours of 10:00 and 11:00 a.m. on September 18, 2023, Morton told two (2) African-American inmates that "[t]hese damn Hispanics need to be moved off the block." See (id. at 8). Morton's comment "sparked a fight between Hispanics and African[-]American [sic]" at 2:45 p.m., which was after her shift ended. See (id.).

On October 17, 2023, Pagan submitted a grievance relating to Morton and the events of September 18, 2023.  (Id.)  Morton "respond[ed]" to the grievance three (3) days later, stating that she never spoke about any inmate's race and believed that Pagan was retaliating against her because he was involved in the September 18, 2023 fight.  See (id.).  Morton also noted that another correctional officer had written up Pagan for his actions in the fight.  (Id.)

Because Pagan believed that Morton "has problems with [H]ispanics and helped to incite the fights," he did "not accept the action proposed" and decided to "move forward to the next grievance step" on November 14, 2023.  See (id. at 9).  It appears that Pagan filed a written grievance to which DCP Captain Scott M. Richmond responded on November 17, 2023.  (Id.)  Captain Richmond found Pagan's grievance "unsubstantiated" because Morton had provided a statement denying Pagan's allegation.  See (id.).  Captain Richmond also indicated that Pagan could request that his issue with Morton get "forwarded to the internal affairs investigator for the purpose of interviewing him."  See (id.).

Pagan "accept[ed] the action proposed" on November 27, 2023, and "the issue was forwarded to the internal affairs investigator[,] . . . Sauble."  See (id.).  Pagan waited for Sauble to interview him for seventy-two (72) days, until Pagan finally filed a grievance about Sauble's failure to interview him on February 8, 2024.  (Id. at 10.)  Pagan's "grievance was answered the same day [when] . . . Sauble came to see [him] for the interviewing process."  See (id.).  However, Pagan asserts that Sauble never properly investigated his claim against Morton and never provided Pagan with a report from his investigation despite Pagan requesting to receive one.  (Id.)

On February 14, 2024, Pagan contacted "treatment" and requested a separation order against "two inmate [sic] that . . . Morton send [sic] to fight [him]."  See (id. at 11).  A separation

order pertaining to the two (2) inmates was "added" on February 16, 2024.  See (id.)
Nevertheless, Pagan filed a grievance against Morton on February 21, 2024, claiming that she
retaliated against him for filing a grievance against her by sending the two (2) inmates to fight
him.  (Id.)

Based on these allegations, Pagan asserts causes of action under Section 1983 against
Morton in her official and individual capacities for (1) retaliating against him in violation of the
First Amendment, (2) violations of his equal protection rights under the Fourteenth Amendment,
(3) the failure to protect him purportedly in violation of the Fourteenth Amendment, and (4)
inflicting cruel and unusual punishment on him in violation of the Eighth Amendment.  (Id. at 5,
9, 11–12.)  Pagan also asserts that Sauble violated his Eighth Amendment right against cruel and
unusual punishment by "ignoring [his] complaint against" Morton.  See (id. at 10).  Sauble also
allegedly violated Pagan's Fourteenth Amendment rights by failing to protect him, properly
investigate his complaint against Morton, or provide him with a copy of the results of the
investigation as requested.  (Id.)  For relief, Pagan sought compensatory and punitive damages
against Defendants.

On May 1, 2024, the Court issued an Order directing the Clerk of Court to send waiver of
service forms to Defendants.  (Doc. No. 19.)  Defendants returned waivers of service on May 31,
2024.  (Doc. No. 24.)

Pagan submitted letters to the Court on June 4, 2024, and June 13, 2024.  (Doc. Nos. 25,
27.)  In the former letter, Pagan asserted that he had been retaliated against for filing this
complaint by transferring him from DCP to Pennsylvania State Correctional Institution
Houtzdale ("SCI Houtzdale").  (Doc. No. 25 at 1.)  In the latter letter, Pagan repeated factual

allegations and causes of action he asserted in his amended complaint against Morton and Sauble. (Doc. No. 27 at 1.)

Defendants filed a motion to strike Pagan's June 4, 2024 and June 13, 2024 letters, or, in the alternative, a motion to dismiss the letters to the extent the Court would consider them to be amendments to the amended complaint, along with a brief in support of the motion on June 18, 2024. (Doc. Nos. 28, 29.) Defendants then filed a motion to dismiss the amended complaint as well as a supporting brief on July 1, 2024. (Doc. Nos. 30, 31.) Pagan filed a brief in opposition to Defendants' motion to strike and/or dismiss on July 5, 2024. (Doc. No. 32.) He then filed a purported supplement to his opposition brief on July 16, 2024. (Doc. No. 34.) Defendants responded by filing a reply brief in further support of their motions to dismiss and motion to strike on July 19, 2024 (Doc. No. 35), as well as a motion to strike paragraphs two (2) through four (4) of Pagan's purported supplement to his opposition brief along with a supporting brief (Doc. Nos. 36, 37).

On October 24, 2024, Pagan filed his second motion for appointment of counsel. (Doc. No. 39). Defendants filed a brief in opposition to this motion on November 7, 2024. (Doc. No. 40.) All the above-referenced motions are ripe for disposition.

## II.    LEGAL STANDARDS

### A.    Motions to Dismiss Under Rule 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled

to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 312 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  See id.  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).  Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the Third Circuit Court of Appeals has identified the following steps a district court must take under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 679).  When following these steps, "a court must

consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In addition, in the specific context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Higgs v. Att'y Gen., 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a pro se litigant, we have a special obligation to construe [their] complaint liberally" (citation and internal quotation marks omitted)). Therefore, a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106). This means the Court must always "remain flexible, especially 'when dealing with imprisoned pro se litigants . . . .'" See Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244–45 (3d Cir. 2013))). Moreover, when construing a pro se complaint, the court will "apply the relevant legal principle even when the complaint has failed to name it." See Mala, 704 F.3d at 244. However, pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" See Vogt, 8 F.4th at 185 (quoting Mala, 704 F.3d at 245).

## B.   Review Under 28 U.S.C. § 1915(e)(2)(B)

Because the Court has granted Pagan leave to proceed in forma pauperis (Doc. No. 7), the Court "shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted." See 28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added). In reviewing legal claims under Section 1915(e)(2)(B)(ii), the Court applies the

aforementioned standard governing Rule 12(b)(6) motions to dismiss.  See, e.g., Smithson v. Koons, No. 15-cv-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under . . . § 1915(e)(2)(B)(ii) . . . is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), report and recommendation adopted, 2017 WL 3008559 (M.D. Pa. July 14, 2017).

### C.    Motion to Strike Under Federal Rule of Civil Procedure 12(f)

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  See Fed. R. Civ. P. 12(f).  "'Immaterial' matter is that which has no essential or important relationship to the claim for relief."  Del. Health Care Inc. v. MCD Holding Co., 893 F. Supp. 1279, 1292 (D. Del. 1995).  "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question."  In re Shannopin Mining Co., No. 96-cv-02185, 2002 WL 31002883, at *28 (W.D. Pa. July 15, 2002).  "A 'scandalous' matter or pleading is one that casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court."  Carone v. Whalen, 121 F.R.D. 231, 232 (M.D. Pa. 1988).  While courts are specifically empowered with the ability to invoke Rule 12(f) sua sponte, striking a pleading is a drastic remedy and should be used sparingly.  See Krisa v. Equitable Life Assurance Soc'y, 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000).

"Motions to strike are decided on the pleadings alone[] and should not be granted unless the relevant insufficiency is 'clearly apparent.'"  Thomas v. Keystone Real Est. Grp., No. 14-cv-00543, 2015 WL 1471273, at *6 (M.D. Pa. Mar. 31, 2015) (quoting Cipollone v. Liggett Grp., Inc., 789 F.2d 181, 188 (3d Cir. 1986)).  Therefore, as a general rule, motions to strike are

disfavored, and "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some significant form of prejudice to one of the parties to the action."  See Mifflinburg Tel., Inc. v. Criswell, 80 F. Supp. 3d 566, 572 (M.D. Pa. 2015) (citations omitted).

    **D.**    **Section 1983**

    Section 1983 is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983. This statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002)).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

## III.    DISCUSSION

    Defendants move to dismiss Pagan's amended complaint (Doc. No. 30), strike Pagan's June 2024 letters to the Court (Doc. No. 28), and strike paragraphs two (2) through four (4) of Pagan's "brief in opposition" (Doc. No. 36).  Pagan moves for the appointment of counsel to represent him in this case.  (Doc. No. 39.)  The Court will first address Defendants' motions to

strike, then screen Pagan's claims in the amended complaint under Section 1915(e)(2)(B), next address Defendants' motion to dismiss, and finally address Pagan's motion for appointment of counsel.

### A.    Defendants' Motion to Strike Pagan's June 2024 Letters or, in the Alternative, Motion to Dismiss to the Extent that Either Letter is Considered an Amendment to the Amended Complaint

Pagan filed two letters in June 2024.  (Doc. Nos. 25, 27.)  The first letter, which was docketed on June 4, 2024, contains what appears to be a First Amendment retaliation claim based on Pagan's belief that he was transferred from DCP to SCI Houtzdale in retaliation for him filing the complaint in this case.  (Doc. No. 25 at 1).  The second letter, which was docketed on June 13, 2024, contains what appears to be a list of the Section 1983 causes of action he desired to assert against Morton and Sauble.  (Doc. No. 27 at 1–3.)

In their motion to strike or, in the alternative, motion to dismiss, Defendants argue that the Court should strike Pagan's letter submissions because they "are set forth in such an informal and inappropriate form that this Court is not required to accept the filing."  See (Doc. No. 29 at 3 (citing Est. of Goldberg ex rel. Goldberg v. Nimoityn, No. 14-cv-00980, 2014 WL 6908013, at *5 n.1 (E.D. Pa. Dec. 9, 2014))).[1]  The Court agrees with the substance of Defendants' argument. It is improper for any litigant, including pro se litigants, to send letters to a district court with the expectation that the district court will act upon those letters.

To put it plainly, at this early stage in the case, the operative document containing Pagan's factual allegations, requests for relief, and causes of action against Defendants is his amended complaint.  (Doc. No. 18.)  In filing his amended complaint, Pagan used his sole opportunity to

---

[1]  In Nimoityn, the district court "caution[ed] Plaintiff that letters are not acceptable forms of responses to properly[]filed motions."  See 2014 WL 6908013, at 5 n.1.

amend his original complaint without first obtaining leave of Court or Defendants' consent, <u>see</u> Fed. R. Civ. P. 15(a)(1) ("A party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."), even though technically he did not do so in accordance with the Federal Rules of Civil Procedure. <u>See</u> <u>id.</u> Therefore, to the extent that Pagan seeks to add <u>any</u> factual allegations in support of his already existing Section 1983 claims for violations of the First, Eighth, and Fourteenth Amendments or add new legal claims, he may only do so "with the opposing party's consent or the court's leave." <u>See</u> Fed. R. Civ. P. 15(a)(2).

Pagan may only seek the Court's leave to amend or supplement his complaint by filing a written motion with the Court. A "motion" is "[a] request for a court order." <u>See</u> Fed. R. Civ. P. 7(b)(1); <u>see also</u> <u>Motion</u>, <u>Black's Law Dictionary</u> (12th ed. 2024) (defining a "motion" as, <u>inter alia</u>, "[a] written . . . application requesting a court to make a specified ruling or order"). "The motion must: (A) be in writing unless made during a hearing or trial; (B) state with particularity the grounds for seeking the order; and (c) state the relief sought." Fed. R. Civ. P. 7(b)(1). In addition, this Court's Local Rules provide that "[e]very motion shall be accompanied by a form of order which, if entered by the court, would grant the relief sought in the motion." <u>See</u> M.D. Pa. L.R. 7.1. Furthermore, except in limited circumstances, a party filing a motion must file a supporting brief either with the motion or no later than fourteen (14) days after the filing of the motion, or the Court will deem the motion as withdrawn. <u>See</u> M.D. Pa. L.R. 7.5.[2]

---

[2] Local Rule 7.5 provides as follows:

> Within fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion. If the motion seeks a protective order, a supporting brief shall be filed with the motion. If a supporting brief is not filed

The Court has detailed the procedures applicable to amending or supplementing a complaint or communicating with the Court because while Pagan has admirably identified his causes of action and attempted to support those causes of action with factual allegations, he has often done so in a piecemeal approach, which is improper.  See, e.g., (Doc. Nos. 9–13, 16, 25, 27).  This puts Defendants in an awkward position of having to determine which allegations and legal claims are being asserted against them in this case.  While there is no evidence that they have been prejudiced so far, it does not render Pagan's supplemental submissions any less improper.

All that being said, because of Pagan's pro se status, the Court has construed Pagan's June 2024 letters (Doc. Nos. 25 and 27) as motions to amend or supplement his amended complaint.  Because Pagan never filed briefs in support of those motions, the Court will deem them withdrawn.  See M.D. Pa. L.R. 7.5.  Even if the Court would not deem the motions withdrawn, the Court would deny them.  The June 13, 2024 letter is an incomplete recitation of allegations and legal claims already asserted in the amended complaint, does not reference events that occurred following the filing of the amended complaint, and is an incomplete document that could not serve as a second amended complaint standing alone.

---

within the time provided in this rule the motion shall be deemed to be withdrawn. A brief shall not be required: (a) In support of a motion for enlargement of time if the reasons for the request are fully stated in the motion, (b) In support of any motion which has concurrence of all parties, and the reasons for the motion and the relief sought are fully stated therein, or (c) In support of a motion for appointment of counsel.

M.D. Pa. L.R. 7.5.  The Court encourages Pagan to review the copies of the pertinent Federal Rules of Civil Procedure and the Court's Local Rules that the Clerk of Court sent to him upon the filing of this action.  See (Doc. No. 5).

13

As for the June 4, 2024 letter, to the extent it can be construed as Pagan's request to supplement his amended complaint with a First Amendment retaliation claim based on his transfer from DCP to state prison, he has failed to state a plausible claim.  To state a plausible First Amendment retaliation claim, a plaintiff must allege that: "(1) [their] conduct was constitutionally protected; (2) [they] suffered an adverse action at the hands of prison officials; and (3) [their] constitutionally protected conduct was a substantial or motivating factor in the decision to discipline [them]."  See Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (citations omitted).  As for the first element of a plaintiff's prima facie case, the filing of lawsuits and prison grievances constitute activity protected by the First Amendment.  See id. (reiterating prior holding that a prisoner-plaintiff engages in constitutionally protected activity when they file a grievance against a prison official (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003))); Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (acknowledging its prior holding "that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment's guarantee of free access to the courts" (citation omitted)); Allah v. Seiverling, 229 F.3d 220, 223–25 (3d Cir. 2000) (concluding that the prisoner-plaintiff stated a First Amendment retaliation claim where he alleged that he had been kept in administrative segregation in retaliation for filing civil rights claims against prison officials).

Regarding the second element of a plaintiff's prima facie case, an adverse action is one that is "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights[.]"  See Mitchell, 318 F.3d at 530 (alterations in original) (citations and internal quotation marks omitted); Fantone v. Latini, 780 F.3d 184, 191 (3d Cir. 2015), as amended (Mar. 24, 2015) (explaining that an adverse action must be "sufficient to deter a person of ordinary firmness from exercising [their] constitutional rights . . ." (citation omitted)).  However, to be actionable under

Section 1983, the alleged adverse action must be more than de minimis.  See McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (explaining that the alleged retaliatory conduct "need not be great in order to be actionable, but it must be more than de minimis" (citations and internal quotation marks omitted)).

And, finally, with respect to the third element of a plaintiff's prima facie case, the Court observes that, "[b]ecause motivation is almost never subject to proof by direct evidence," a plaintiff must typically "rely on circumstantial evidence to prove a retaliatory motive."  See Watson, 834 F.3d at 422.  The plaintiff "can satisfy [their] burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link."  See id. (footnote omitted).

In his June 4, 2024 letter, Pagan alleges that he was transferred from DCP to state prison in retaliation for him filing his complaint in this case.  He avers that Defendants received service of the complaint on or around May 6, 2024, and he was transferred from DCP on May 8, 2024.  These averments would be sufficient to satisfy the first and third elements of a prima facie First Amendment retaliation claim insofar as he alleges he engaged in protected activity and identifies an event that occurred in close proximity to Defendants becoming aware of his protected activity.  However, these allegations fall far short on the second element, i.e., adverse action.

Concerning when a prison transfer can rise to the level of an adverse action, the Court notes that:

> "[U]nder some circumstances, a prison transfer may constitute an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights."  Chruby v. Bearjar, CIVIL ACTION NO. 3:17-cv-01631, 2018 WL 4537404, at *12 (M.D. Pa. Aug. 27, 2018). "For example, a transfer into administrative or restrictive confinement, a less desirable cell or location within the prison, or a dangerous cell block might represent an adverse action."  Lawson v.

Crowther, Civil Action No. 17-39 Erie, 2018 WL 6524380, at *3 (W.D. Pa. Oct. 30, 2018) (collecting cases); see also Palmore v. Hornberger, 813 F. App'x 68, 70 (3d Cir. 2020) ("[B]eing placed in lockdown, being moved to restricted housing, and being issued misconduct charges are more than 'de minimis' adverse actions." (quoting McKee, 436 F.3d at 170)); Dunbar v. Barone, 487 F. App'x 721, 723 (3d Cir. 2012) ("In the prison context, . . . the following actions were sufficient to establish adversity: several months in disciplinary confinement; denial of parole, financial penalties, and transfer to an institution whose distance made regular family visits impossible; and placement in administrative segregation that severely limited access to the commissary, library, recreation, and rehabilitative programs.") Dunbar v. Barone, 487 F. App'x 721, 723 (3d Cir. 2012) (emphases added). In such cases, the cell transfers "have a strong deterrent effect." Dillard v. Talamantes, CIVIL NO. 1:15-CV-974, 2018 WL 1518565, at *11 (M.D. Pa. Mar. 28, 2018); see also Griffin v. Malisko, No. 1:18-cv-01155, 2018 WL 5437743, at *3 (M.D. Pa. Oct. 29, 2018). In contrast, cell transfers that result in only "[t]emporary inconveniences . . . do not meet this standard." Griffin, 2018 WL 5437743, at *3. "[W]hether a prisoner has met this prong of his retaliation claim will," however, "depend on the facts of the particular case." Dillard, 2018 WL 1518565, at *11.

See Roman v. County of Chester, No. 23-cv-01662, 2024 WL 4844792, at *12 (E.D. Pa. Nov. 20, 2024) (alterations in original).

Here, Pagan alleges that he was a convicted and sentenced state prisoner at the time he was incarcerated at DCP. See (Doc. No. 18 at 2, 10); see also Commonwealth v. Ortiz-Pagan, 322 A.3d 247, 250 (Pa. Super. Ct. 2024) (indicating that Pagan was sentenced to a period of incarceration for a minimum of seven (7) years to a maximum of fourteen (14) years in the Court of Common Pleas of Dauphin County on January 12, 2022). All Pagan alleges in his letter is that he was returned to state prison.[3] This is insufficient to show an adverse action for the purposes of a First Amendment retaliation claim. Therefore, if the Court were to substantively address

---

[3] The Court recognizes that Pagan alleges that he was at DCP since March 31, 2023, and he was waiting for the resolution of "his appeal on his criminal case." See (Doc. 25 at 1). However, there is nothing about waiting for the resolution of an appeal that would have required him to stay at DCP. It appears that he was at DCP to litigate a petition under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. §§ 9541-46 ("PRCA"). See Ortiz-Pagan, 322 A.3d at 250–51. The PCRA court dismissed his petition on August 25, 2023. See id. at 251. Since the PCRA proceedings concluded, there would have been no need for Pagan to remain at DCP while his appeal was pending.

Pagan's June 4, 2024 letter, the Court would find that he has not pleaded a plausible claim for relief.

Overall, Pagan should not repeatedly send letters to the Clerk of Court in which he reasserts allegations or legal claims in his amended complaint or seeks to add factual allegations or legal claims to those in his amended complaint, because doing so is wholly improper. In this instance, however, the Court will construe Pagan's June letters as motions to amend or supplement his amended complaint and will deem them withdrawn due to Pagan's failure to file briefs in support of the motions in accordance with Local Rule 7.5. In addition, the Court will deny as moot Defendants' motion to strike or, in the alternative, motion to dismiss.[4]

---

[4] Even if the Court did not deny Defendants' motion to strike as moot, the Court would deny it because it is also procedurally improper. Rule 12(f) only permits a court to strike "a pleading," see Fed. R. Civ. P. 12(f), which include: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." See Fed. R. Civ. P. 7(a). Neither a motion nor a letter is a pleading. See Gates v. Syrian Arab Republic, 646 F.3d 1, 5 (D.C. Cir. 2011) (explaining that "[a] motion is not a pleading" because Federal Rule of Civil Procedure "7(b) describes a 'motion' as 'a request for an order' and Rule 7(a) does not include a 'motion' in its list of documents considered 'pleadings'" (quoting Fed. R. Civ. P. 7(a)–(b))); Smith v. Westchester Cnty., 769 F. Supp. 2d 448, 455 n.2 (S.D.N.Y. 2011) (pointing out that plaintiff's "letter is not a pleading"). Rule 12(f) does not apply to documents other than pleadings. See Berkery v. Equifax Info. Servs. LLC, 429 F. Supp. 3d 24, 30 (E.D. Pa. 2019) ("Rule 12(f) applies to pleadings, and 'motions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike.'" (quoting United States v. Viola, No. 02-cv-09014, 2003 WL 21545108, at *3 (E.D. Pa. July 7, 2003))); see, e.g., Int'l Bhd. of Elec. Workers, Loc. 614, AFL-CIO v. Peco Energy Co., No. 23-cv-04388, 2024 WL 4101918, at *1 n.1 (E.D. Pa. Feb. 22, 2024) ("Defendant's January 11, 2024 letter is not a pleading and Rule 12(f) is therefore inapplicable."); Pagano v. Ventures Tr. 2013-I-HR, No. 15-cv-01489, 2016 WL 8201975, at *4 (M.D. Pa. Dec. 29, 2016) ("Because Plaintiff's letter is not a pleading, it cannot be stricken pursuant to Rule 12(f)." (citation omitted)), report and recommendation adopted, 2017 WL 489414 (M.D. Pa. Feb. 6, 2017).

**B.      Defendants' Motion to Strike Paragraphs Two (2) Through Four (4) of Pagan's Purported Supplement to His "Brief in Opposition"**

On July 16, 2024, the Clerk of Court docketed a letter from Pagan, which was untitled, as a "Supplement" to his brief in opposition to Defendants' motion to strike.  (Doc. No. 34.)  In moving to strike this document, Defendants understandably refer to the document as denoted by the Clerk of Court, i.e., as a motion to supplement Pagan's opposition brief to the motion to strike.  (Doc. No. 37 at 2.)  However, upon examination, it does not appear that Pagan's submission is a supplement to his brief in opposition to his motion to strike at all.  Instead, in paragraph one (1) of his submission, Pagan discusses his use of the DCP's grievance system and exhaustion.  (Doc. No. 34 at 1.)  In paragraphs two (2) through three (3) of his submission, Pagan adds new factual allegations that he appears to believe support his failure-to-protect claims against Morton pertaining to the September 18, 2023 fight at DCP.  See (id. at 1–3.)  In paragraph four (4), Pagan expresses that he "want[s] . . . this Honorable Court to know this info and to see how everything star [sic] and why."  See (id. at 3.)

In their motion to strike, Defendants request that the Court strike only paragraphs two (2) through four (4) of Pagan's July 16, 2024 submission due to his addition of new factual allegations therein.  (Doc. No. 37 at 3.)  By not also requesting that the Court strike paragraph one (1) of this submission, where Pagan addresses exhaustion of his administrative remedies at the DCP, Defendants appear to recognize that he is contesting the part of their motion to dismiss in which they contend that he failed to fully exhaust his administrative remedies at DCP as to all claims in the amended complaint.  If so, the Court agrees that Pagan attempts to confront their exhaustion argument in paragraph one.

Nevertheless, even if the Court considers Pagan's submission as his response to Defendants' motion to dismiss,[5] Defendants correctly point out that Pagan's introduction of new factual allegations into this case in paragraphs two (2) through four (4) was improperly included in such a response.  See (Doc. No. 37 at 3–5).  "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  Commw. of Pa. ex. rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted); see also Grayson v. Mayview State Hosp., 293 F.3d 103, 109 n.9 (3d Cir. 2002) ("For the sake of clarity, a prisoner plaintiff (or any other plaintiff) should not be able effectively to amend a complaint through any document short of an amended pleading."); Blair v. City of Pittsburgh, No. 14-cv-01473, 2015 WL 1859672, at *1 (W.D. Pa. Apr. 22, 2015) ("[W]hen a plaintiff improperly relies upon new allegations not set forth in [their] complaint and other matters outside the pleadings in opposition to a motion to dismiss, such additional facts cannot be considered by the Court in the context of deciding a Rule 12(b)(6) Motion." (citations omitted)).  As such, Pagan's inclusion of new factual allegations in what might be his response to Defendants' motion to dismiss is improper.  This does not mean, however, that those allegations should be stricken.  Instead, "the better approach is to simply disregard any documents or information improperly before the Court."  See S.E. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc., No. 1:12-cv-00993, 2016 WL 7117455, at *7 (M.D. Pa. Dec. 7, 2016) (citations omitted).  Moreover, as explained above, Defendants' motion to strike Pagan's July 16, 2024 submission, whether construed as a letter, motion, or brief, under Rule 12(f) is also improper because the submission is not a pleading.

---

[5]  The only indications in Pagan's submission that it might be filed in response to Defendants' motion to dismiss are when he addresses exhaustion and when he states, "Defendants . . . just want . . . this Honorable Court [to] dismiss [his] complaint," at the end of the submission.  See (Doc. No. 34 at 1, 3).

Accordingly, although the Court will deny Defendants' motion to strike paragraph two (2) through four (4) of Pagan's July 16, 2024 letter, the Court will not consider those paragraphs in resolving Defendants' motion to dismiss.

**C.    Section 1915(e)(2)(B) Screening**

**1.    Pagan's Official-Capacity Claims for Monetary Damages**

Pagan asserts Section 1983 claims for monetary damages against Defendants in their official capacities.  See (Doc. No. 18 at 12).  Suing Defendants in their official capacities is akin to suing Dauphin County itself.  See Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690 n.55 (1978).  To assert a Section 1983 claim against a county by way of an official-capacity claim against a county employee, a plaintiff must identify a policy or custom fairly attributable to the municipality that caused their constitutional injury.  See id. at 690–91.  The plaintiff must also plausibly plead facts showing that each Defendant is a decisionmaker endowed with authority to promulgate or establish an official custom or policy.  See Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (explaining that a decision to adopt a particular course of action made by the "government's authorized decisionmakers" represents an act of official government policy (emphasis added)); McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009) (noting that plaintiff failed to "allege conduct by a municipal decisionmaker" in his attempt to assert municipal Section 1983 liability).

In this case, Pagan has neither identified a policy promulgated by either Defendant, nor has he plausibly alleged that either Defendants would have decision-making authority to establish a custom or policy.   Accordingly, the Court will dismiss Pagan's official-capacity claims against Defendants pursuant to Section 1915(e)(2)(B)(ii).

### 2.    Pagan's Requests for Compensatory Damages

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ."  See 28 U.S.C. §1997e(e).  To satisfy the PLRA, the plaintiff-prisoner must allege a "less-than-significant-but-more-than-de minimis physical injury."  See Mitchell, 318 F.3d at 534.  If a plaintiff fails to allege a sufficient physical injury in the context of an alleged constitutional violation, they may not seek an award of compensatory damages; however, they may still seek nominal or punitive damages.  See id. at 533; see also Allah, 226 F.3d at 251–52 (concluding that Section 1997e(e) does not bar plaintiff from seeking award of nominal or punitive damages for alleged constitutional violation).

Here, Pagan includes no allegations in his amended complaint that he was physically injured at any point, including during the fight.  Thus, his allegations fail to satisfy Section 1997e(e)'s physical injury requirement, and the Court will dismiss Pagan's Section 1983 claims for compensatory damages pursuant to Section 1915(e)(2)(B)(ii).

### 3.    Pagan's Fourteenth Amendment Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  See U.S. Const. amend. XIV, § 1; City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyer v. Doe, 457 U.S. 202, 216 (1982)).  To establish an equal protection claim, a plaintiff must show that: (1) when compared with others similarly situated, they were selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible

considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.  See Vurimindi v. City of Phila., 521 F. App'x 62, 65 (3d Cir. 2013) (unpublished) (citing Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990).  To be "similarly situated," parties must be "alike in all relevant aspects."  See Startzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2008).  In addition, the plaintiff has the burden of proving, under the second prong, the existence of purposeful discrimination.  See PG Pub. Co. v. Aichele, 705 F.3d 91, 115 (3d Cir. 2013) (explaining that plaintiff carries the burden of showing "intentional or purposeful discrimination"); see also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264–65 (1977) ("[O]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact. 'Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination.' [Washington v. Davis, 426 U.S. 229, 242 (1976)].  Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.").

It is unclear from the amended complaint whether Pagan asserts equal protection claims against both Defendants.  To the extent that he asserts an equal protection claim against them, he has failed to allege a plausible claim because he does not specifically allege that he is a member of a protected class.  Moreover, regarding a possible equal protection claim against Sauble, even if it was reasonably inferable from the amended complaint that Pagan is Hispanic due to his participation in the fight on September 18, 2024, he has not alleged that Sauble treated him differently from others similarly situated.  Accordingly, the Court will dismiss Pagan's Section 1983 equal protection claims under Section 1915(e)(2)(B)(ii).

### D.    Defendants' Motion to Dismiss

In their motion to dismiss, Defendants argue that Pagan has failed to plausibly allege any claim under the First, Eighth, or Fourteen Amendments against Morton as well as any claim under the Eighth or Fourteenth Amendment against Sauble.  Defendants also contend that the Court should dismiss Pagan's Section 1983 claims because he failed to fully exhaust his administrative remedies as to any claim.  The Court will address each argument in turn.

#### 1.    Section 1983 Claims Against Morton

#### a.    First Amendment Retaliation

Pagan has asserted a First Amendment retaliation claim against Morton based on her allegedly sending two (2) inmates to fight him in mid-February 2024 because he filed a grievance against her on October 17, 2023.  (Doc. No. 18 at 11.)  Defendants argue that Pagan has failed to allege a plausible First Amendment retaliation claim against Morton because his filing of a grievance did not constitute constitutionally protected conduct insofar as inmates do not have a constitutional right to a grievance process.  (Doc. No. 31 at 18.)  Defendants also contend that Pagan has failed to show a causal connection between his filing of a grievance because he has not alleged enough facts about Morton's actions in soliciting two inmates to fight him, such as "how the solicitation was made; when the solicitation was made; to whom the solicitation was made; where the solicitation was made; or what was offered, if anything."  See (id. at 18–19).  The Court finds Defendants' arguments to be either incorrect or unpersuasive. Nevertheless, the Court will dismiss Pagan's First Amendment retaliation claim under Section 1915(e)(2)(B)(ii) for the failure to state a claim.

As for Defendants' arguments, their first argument about the filing of a grievance not qualifying as constitutionally protected conduct under the First Amendment is wrong.  The filing

23

of a grievance against a prison official constitutes activity protected by the First Amendment. See Watson, 834 F.3d at 422 (citing Mitchell, 318 F.3d at 530).  Regarding their second argument, Defendants ask the Court to impose too much of a burden on Pagan.  Pagan's allegations about Morton directing two (2) inmates to fight him, which led him to seek a separation order against the inmates, is factually sufficient to inform Defendants of his claim. Defendants could obtain the information they seek the Court to require Pagan to add to his amended complaint through discovery.  Accordingly, the Court will deny the part of Defendants' motion to dismiss relating to Pagan's First Amendment retaliation claim against Morton.

Although the Court will deny that part of Defendants' motion to dismiss, the Court will still dismiss Pagan's First Amendment retaliation claim under Section 1915(e)(2)(B)(ii).  Despite Defendants' reference to the lack of a causal connection as a basis for dismissal, they do not actually address whether Pagan alleged a sufficient causal connection.  For there to be a causal connection between Pagan's protected activity (filing a grievance) and the action that allegedly constituted retaliation (soliciting inmates to fight him), Pagan must demonstrate either a suggestive temporal proximity between the protected activity and the allegedly retaliatory action or a pattern of antagonism coupled with timing to establish a causal link.  See Mearin v. Greene, 555 F. App'x 156, 158–59 (3d Cir. 2014) (unpublished) (citing Lauren W. ex. rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)).  The Third Circuit has explained that, in the Title VII retaliation context, "'[a]lthough there is no bright line rule as to what constitutes unduly suggestive temporal proximity,'" seven (7) days was "in the realm of what this Court and others have found sufficient . . . ."  See Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 307 (3d Cir. 2012) (quoting LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007)); see also Azzaro v. County of Allegheny, 110 F.3d 968, 981 (3d Cir. 1997) ("The

24

causation required to establish a [First Amendment retaliation] claim under § 1983 is identical to that required under Title VII.").

In this case, Pagan alleges that he filed a grievance against Morton on October 17, 2023, and the process related to that grievance concluded a month later.  See (Doc. No. 18 at 8–9).  His allegations relating to Morton's solicitation of inmates to fight him did not allegedly occur until mid-February 2024, which is approximately three (3) months later.  This approximately three (3)-month period between his protected conduct and the allegedly adverse action is not suggestive of temporal proximity.  Moreover, he has not alleged a pattern of antagonism by Morton to effectively fill-in this extensive gap in time.  Accordingly, the Court will dismiss Pagan's First Amendment retaliation claim against Morton for the failure to state a claim under Section 1915(e)(2)(B)(ii).

### b.    Eighth Amendment Failure-to-Protect Claim

The Court notes that Pagan references both the Fourteenth Amendment and the Eighth Amendment relating to Morton's alleged conduct in instigating a fight on September 18, 2023, and in soliciting two (2) inmates to fight him in February 2024.  See (Doc. No. 18 at 9).  Despite Pagan's reference to the Fourteenth Amendment, the Court construes Pagan as asserting two (2) Eighth Amendment failure-to-protect claims against Morton.  See Smith v. McGinley, No. 22-cv-01382, 2024 WL 2725041, at *4 (M.D. Pa. May 28, 2024) ("There are several types of Eighth Amendment claims, including claims alleging: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; the use of excessive force; and failure to protect from assaults by other inmates."), aff'd, No. 24-2173, 2024 WL 4589233 (3d Cir. Oct. 28, 2024) (unpublished); see also Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260 (3d Cir. 2010) (explaining that under the "more-specific-provision rule," "if a constitutional claim is covered by

25

a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process" (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997))). This construction is supported by Pagan identifying his Fourteenth Amendment claim as a failure-to-protect claim. See (Doc. No. 18 at 9 (alleging that "Morton violated [his F]ourteenth [A]mendment right by fail [sic] to protect [him]")).

As for Eighth Amendment failure-to-protect claims, prison officials have a duty "'to protect prisoners from violence at the hands of other prisoners.'" See Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." See Farmer, 511 U.S. at 834. Therefore, for a prisoner-plaintiff to plausibly allege an Eighth Amendment failure-to-protect claim, they must allege that: (1) they were incarcerated under conditions posing a substantial risk of serious harm (the objective element); and (2) the prison officials involved had a sufficiently culpable state of mind (the subjective element). See id. Specifically, the inmate must allege facts showing that the prison official knew of and disregarded an excessive risk to inmate health or safety. See Hamilton, 117 F.3d at 746.

### (1)    Defendants' Arguments

In addressing the objective element of Pagan's failure-to-protect claims against Morton, Defendants argue that he failed to plausibly allege that he was incarcerated under conditions posing a substantial risk of serious harm for several reasons. First, they contend that Pagan's allegations are not entitled to deference because they are conclusory and implausible. See (Doc. No. 31 at 15). Second, they assert that Pagan failed to plead sufficient facts about his conditions

of confinement posing a substantial risk of harm, such as "what his conditions of incarceration are; how his conditions are different than every other inmate in his facility; or how the conditions allowed the September 2023 fight to occur or allowed two inmates to attempt to fight [him]." See (id.).  Third, Defendants point out that Pagan did not allege that he was injured during the September 18, 2023 fight, or allege that any altercation occurred following Morton allegedly soliciting inmates to fight him in February 2024.  See (id. at 15 nn.2, 3).  Fourth, they assert that Pagan's allegations show that prison officials took reasonable steps to protect him insofar as they placed him in protective custody and issued a separation order to protect him from the two (2) inmates Morton allegedly solicited to fight him in February 2024.  See (id. at 16).  Fifth, and finally, Defendants contend that Pagan's allegations are insufficient because he did not allege that Morton "interfered with, or compromised, the safety measures employed by the penitentiary; ignored the safety measures; helped the other inmates involved in the right on September 23, 2018 or the two unknown inmates overcome the safety measures."  See (id.).

Concerning the subjective element of Pagan's failure-to-protect claims, Defendants address only the September 18, 2023 incident.  See (Doc. No. 31 at 16–17).  Defendants argue that the complaint lacks facts showing that Morton was aware of a serious risk posed to Pagan. See (id. at 16).  They also contend that Morton's alleged statement about moving Hispanics off the block did not constitute a "call to action," and "[i]t is implausible that such a statement would drive inmates into an uncontrolled frenzy when each inmate implicitly knows such conduct is going to have disciplinary consequences."  See (id. at 17).

In addressing Defendants' arguments, the Court starts with Pagan's failure-to-protect claim pertaining to Morton allegedly soliciting two (2) inmates to fight him in February 2024,

before turning to the events of September 18, 2023.  As explained below, the Court will deny the motion as to the February 2024 events but grant the motion as to the September 18, 2023 events.

### (2)    February 2024 Solicitation of Inmates

Regarding Pagan's allegations pertaining to events in February 2024, Defendants' arguments entirely miss the mark.  In the first instance, Pagan's allegations pertaining to what occurred in February 2024, while brief, are not "conclusory or implausible."  See (id. at 15); see also Conclusory, Black's Law Dictionary (12th ed. 2024) (defining "conclusory" as "[e]xpressing a factual inference without stating the underlying facts on which the inference"); cf. Plausible, Black's Law Dictionary (12th ed. 2024) (defining "plausible" as "[c]onceivably true or successful; possibly correct or even likely").  Instead, he has alleged facts, namely, that Morton sent two (2) inmates to fight him, resulting in him seeking and obtaining a separation order from those inmates.  See (id. at 11).  These factual allegations are not outside the bounds of conceivability, nor are they expressing a factual inference.

Additionally, Pagan was not required include the numerous additional factual allegations Defendants believe he should have alleged about the conditions of his cell.  See (Doc. No. 31 at 15, 16).  This is not a conditions-of-confinement claim in which Pagan complains about the conditions of his cell; instead, he alleges that the conditions of his confinement posing a substantial risk of serious harm to him were two (2) inmates being sent by a correctional officer to fight him, which caused him to seek and receive a separation order.  See Lyons v. Beard, No. 07-cv-00444, 2011 WL 398273, at *12 (M.D. Pa. Jan. 10, 2011) (determining that allegations regarding corrections officers "actively soliciting inmates to assault" the plaintiff "plainly make out an Eighth Amendment violation"), report and recommendation adopted, 2011 WL 441802 (M.D. Pa. Feb. 3, 2011); G'Andre v. Va. Dep't of Corr., No. 18-cv-00781, 2023 WL 11886905, at

*3 (E.D. Va. Sept. 15, 2023) ("[I]t is improper for a corrections officer to direct other inmates to physically attack another inmate."), report and recommendation adopted sub nom., Coleman v. Carter, No. 18-cv-00781, 2023 WL 11886906 (E.D. Va. Sept. 30, 2023). While Pagan could have included additional facts surrounding this claim, he did not have to do so to state a plausible failure-to-protect claim.

As for Defendants' argument about Pagan's failure to allege that he had an altercation with the two (2) inmates or was otherwise harmed, the failure to allege harm does not render the failure-to-protect claim implausible. Instead, it affects the types of damages Pagan could seek to recover. See, e.g., Calipo v. Wolf, No. 18-cv-00320, 2019 WL 6879570, at *12 n.6 (W.D. Pa. Nov. 15, 2019) (pointing out that under the PLRA, "[s]hould Calipo fail to establish that she sustained any physical injury as a result of Defendants' failure to protect her from other inmates, she may be restricted to seeking nominal or punitive damages on this claim" (citation omitted)), report and recommendation adopted, 2019 WL 6877181 (W.D. Pa. Dec. 17, 2019); Donaldson v. Baldwin, No. 16-cv-01128, 2017 WL 513918, at *10 (S.D. Ill. Feb. 8, 2017) (explaining that "[i]f the substantial risk of serious injury [to the prisoner-plaintiff] has already passed" the PLRA would bar compensatory damages; however, the plaintiff may still seek nominal or punitive damages for the failure to protect).

Defendants also mistakenly focus on the steps prison officials took to protect Pagan from the two (2) inmates and the lack of any allegation that Morton interfered with those safety measures. Their focus should be on what Morton allegedly did, i.e., soliciting inmates to fight him. The fact that prison officials took steps after the alleged solicitation to protect Pagan does not mean that Morton did not create conditions posing a substantial risk of harm to him.

Moreover, it is reasonable to infer from the amended complaint that prison officials recognized a substantial risk of harm to Pagan by entering the separation order to protect him.

Regarding the subjective component, Defendants do not address that component as to the February 2024 events in their brief other than to mistakenly argue that Pagan's allegations are conclusory and implausible. See (Doc. No. 31 at 16). Even if they had posited a more specific argument here, the Court finds it unavailing because Pagan's allegations are sufficient to satisfy the subjective component of a failure-to-protect claim. See McClain v. Carney, No. 23-cv-04012, 2024 WL 113761, at *10 (E.D. Pa. Jan. 10, 2024) ("Anyone who encourages other inmates to harm a prisoner without some penological purpose causes risk to the prisoner's safety and does so knowingly" (citing Smolen v. Brown, No. 18-cv-07621, 2023 WL 6199094, at *9 (S.D.N.Y. Sept. 22, 2023))); Joseph v. Parciasepe, No. 14-cv-00414, 2015 WL 3869676, at *7 (E.D. Cal. June 23, 2015) ("Soliciting another inmate to assault plaintiff would not only make [defendant] aware of a substantial risk of harm to plaintiff's safety, it would mean he was actively attempting to create an excessive risk to plaintiff's safety . . . ."), report and recommendation adopted, 2015 WL 4921050 (E.D. Cal. Aug. 14, 2015). Therefore, the Court will deny the part of Defendants' motion to dismiss seeking dismissal of Pagan's Eighth Amendment failure-to-protect claim against Morton based on events allegedly occurring in February 2024.

### (3)    Events on September 18, 2023

Unlike his allegations about Morton's conduct in February 2024, Pagan's allegations pertaining to Morton inciting a fight on September 18, 2023, are insufficient to state a plausible failure-to-protect claim. Regarding the objective element of this claim, Defendants are generally correct that there are not enough factual allegations showing how Morton's statement to two (2)

African-American inmates about moving Hispanics "off the block" created a condition posing a substantial risk of serious harm to him. Morton's statement neither references Pagan nor is it reasonably inferable from this statement that she was referring to him. Although Pagan attempted to identify facts in his submission in response to the motion to dismiss (Doc. No. 34) to explain how Morton's statement created a substantial risk of harm to him, those allegations are not included in the amended complaint. Considering that the fight occurred several hours after Morton allegedly made this statement and after her shift at DCP ended, the allegations in the amended complaint are insufficient to show that Morton's statement created conditions posing a substantial risk of serious harm to Pagan several hours after it was made.

As for the subjective component of this claim, the allegations are also insufficient to show that Morton had a sufficiently culpable state of mind. At best, Morton's alleged statement shows that she may have had an issue with Hispanics. There are no factual allegations included in the amended complaint demonstrating that Morton was aware of and disregarded an excessive risk to Pagan's safety through her alleged statement. Without factual allegations indicating that Morton would have known that her statement would place Pagan at risk of substantial harm, Pagan has failed to state a plausible failure-to-protect claim against Morton pertaining the events on September 18, 2023. Accordingly, the Court will grant the part of Defendants' motion to dismiss Pagan's Eighth Amendment failure-to-protect claim against Morton as it pertains to the events which allegedly occurred on September 18, 2023.

### 2. Section 1983 Claims Against Sauble

Defendants generally contend that Pagan has failed to state a plausible Section 1983 claim against Sauble for violations of the Eighth or Fourteenth Amendments. (Doc. No. 31 at 19–22.) The Court has construed the amended complaint as containing claims that Sauble (1)

violated the Eighth Amendment's prohibition on cruel and unusual punishments by "ignoring"

Pagan's complaint against Morton, (2) violated the Eighth Amendment by failing to protect

Pagan insofar as Sauble did not properly investigate his complaint against Morton, and (3)

violated the Fourteenth Amendment by never providing Pagan with a report from any

investigation into his complaint against Morton.  So construed, the Court agrees with Defendants

that Pagan has failed to state a plausible Section 1983 claim against Sauble.

Concerning Pagan's Eighth Amendment claims against Sauble, the Court notes that "[t]he

Eighth Amendment guarantees the right to be free from 'cruel and unusual punishments' while in

custody."  See Ricks v. Shover, 891 F.3d 468, 473 (3d Cir. 2018) (citing Whitley v. Albers, 475

U.S. 312, 318 (1986)).  Also, as already explained, "[a] properly stated Eighth Amendment claim

must allege a subjective and objective element."  See id. (citing Hudson v. McMillian, 503 U.S.

1, 8 (1992)).  The subjective element requires allegations showing that the "defendant official

act[] with a 'sufficiently culpable state of mind,'" see id. (quoting Wilson v. Seiter, 501 U.S. 294,

298 (1991)), while the objective element requires allegations demonstrating that the defendant

official's conduct was "objectively 'harmful enough,' or 'sufficiently serious' to violate the

Constitution."  See id. (quoting Wilson, 501 U.S. at 298, 303).

Here, to the extent that Pagan asserts a claim that Sauble's actions in allegedly failing to

investigate his complaint against Morton constitute cruel and unusual punishment, his factual

allegations fall well short of plausibly showing that Sauble had a culpable state of mind.  The

incident with Morton had ended by the time Sauble was allegedly supposed to be conducting his

investigation into Pagan's complaint about her.  There are no factual allegations remotely

showing that Sauble was knowingly and deliberately ignoring a substantial risk of harm to Pagan by not investigating Pagan's complaint.[6]

Additionally, Pagan's allegations fail to plausibly demonstrate that Sauble's conduct was harmful enough or sufficiently serious to violate the Constitution. Pagan does not allege any actual harm caused by Sauble's alleged inaction, and his allegations do not rise to the level of seriousness to constitute an Eighth Amendment violation.

As for Pagan's failure-to-protect claim against Sauble, this claim also fails because Pagan does not include any allegations that Sauble failed to protect him from harm. Again, the harm Pagan was complaining about already occurred. There are no allegations that Sauble was aware of, or should have been aware of, other harm that could come to Pagan if he did not investigate Pagan's complaint. In other words, in allegedly failing to investigate Pagan's complaint, Sauble neither failed to protect Pagan from anyone or anything, nor disregarded an excessive risk to Pagan's health or safety.

Finally, Pagan's allegations about not receiving a copy of any written investigation or report do not state a plausible claim under any Amendment to the Constitution. As Defendants point out, "inmates do not have a constitutional right to an internal investigation," see (Doc. No. 31 at 22 (citing cases)), just as they lack a constitutional right to a grievance process. See Cordero v. Kelley, No. 21-1498, 2022 WL 212828, at *2 (3d Cir. Jan. 24, 2022) ("Prisoners do not have a constitutional right to grievance procedures." (citing Massey v. Helman, 259 F.3d 641,

---

[6] Although he did not include it as an exhibit to the amended complaint, Pagan previously filed a letter he appears to have sent to Sauble in which Pagan thanks Sauble for sending "Lt. Escalante" to "talk to [him] about the incident." See (Doc. No. 10-1 at 1). This letter would appear to cast doubt on Pagan's claim that no investigation into his complaint occurred. Pagan has not pointed to any requirement that Sauble had to be the individual who interviewed him for an investigation into his complaint against Morton to have occurred.

647 (7th Cir. 2001) and <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam))).

Therefore, because Pagan lacked a constitutional right to an internal investigation, "the failure to

favorably address, respond to and/or investigate . . . do[es] not implicate a constitutional right."

<u>See</u> <u>Hakala v. Klem</u>, No. 09-cv-00833, 2009 WL 3852787, at *5 (M.D. Pa. Nov. 18, 2009)

(citing <u>Bailey v. Palakovich</u>, No. 06-cv-01640, 2007 WL 1450698, at *3–4 (M.D. Pa. May 14,

2007)).  Moreover, Pagan has not explained how the lack of a response to his request for copies

of any investigative report constitutes a constitutional violation, and he has not alleged that he

had a right to a copy of any report, if one was prepared.  <u>See, e.g.</u>, <u>Jones v. Buncome County</u>

<u>Sheriff Dep't</u>, No. 08-cv-00390, 2008 WL 4130253, at *1 n.1 (W.D.N.C. Sept. 3, 2008) ("A

prisoner has no right to copies of internal investigation files.").  To the extent that Pagan

somehow attempts to assert a substantive due process claim, he has not alleged behavior which

shocks the conscience, which is required to state such a claim.  <u>See</u> <u>County of Sacramento v.</u>

<u>Lewis</u>, 523 U.S. 833, 846 (1998).  Accordingly, the Court will grant Defendants' motion to

dismiss to the extent they seek dismissal of Pagan's Section 1983 claim against Sauble relating to

an investigative report.

### 3.    Failure to Exhaust Administrative Remedies

Defendants also move to dismiss Pagan's Section 1983 claims because they contend that

he failed to exhaust his administrative remedies.  (Doc. No. 31 at 22–26).  In support of this part

of their motion, they rely on an affidavit from DCP Warden Gregory C. Briggs ("Warden

Briggs"), in which he mentions that DCP has a four (4)-step grievance process, lists Pagan's

grievances and provides a brief description of them, and indicates that Pagan did not complete all

four (4) steps of the grievance process as to any Section 1983 claim he asserts in his amended

complaint.  <u>See</u> (Doc. No. 30-3 at 1–4).  Although the Court has no reason to doubt the veracity

of the statements in Warden Briggs's affidavit, the Court will not dismiss the amended complaint for the failure to exhaust at this time based on that affidavit.

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a). Stated differently, the exhaustion of available administrative remedies is a prerequisite for a prisoner asserting a claim under Section 1983 regarding their prison conditions. See Rinaldi v. United States, 904 F.3d 257, 265 (3d Cir. 2018); see also Ross v. Blake, 578 U.S. 632, 638 (2016) (reiterating that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies" (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006))); Jones v. Bock, 549 U.S. 199, 211 (2007) (stating that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (citation omitted)); Booth v. Churner, 532 U.S. 731, 733–34 (2001) (stating that the PLRA "now requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions" (quoting 42 U.S.C. § 1997e(a))).

"The PLRA requires proper exhaustion, meaning 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'" Downey v. Pa. Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (alteration in original) (quoting Woodford, 548 U.S. at 88). "These applicable procedural rules are supplied by the individual prisons." Id. (citations omitted); see also Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004) (stating that "the determination [of] whether a prisoner has 'properly' exhausted a claim . . . is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances"); Jones,

549 U.S. at 218 (explaining that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim"); Woodford, 548 U.S. at 90 (indicating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules"). A prisoner's failure to follow a prison's procedural rules will result in a procedural default of their claims. See Spruill, 372 F.3d at 230–32 (concluding that PLRA's exhaustion requirement includes procedural default component); see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010) (pointing out that Spruill held "that the PLRA includes a procedural default component and the determination whether a prisoner properly exhausted a claim is made by evaluating compliance with the prison's specific grievance procedures"). A procedural default may be excused, however, if the prisoner can show that the administrative remedies were unavailable to them. See Rinaldi, 904 F.3d at 266 ("The PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available.'" (quoting Woodford, 548 U.S. at 93)). "Available means capable of use; at hand." Small v. Camden County, 728 F.3d 265, 271 (3d Cir. 2013) (internal citations and quotation marks omitted). "An administrative remedy is unavailable when it 'operates as a simple dead end[,] . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Downey, 968 F.3d at 305 (alterations in original) (quoting Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019)). "Although the availability of administrative remedies to a prisoner is a question of law, it necessarily involves a factual inquiry." Small, 728 F.3d at 271.

In general, the "[f]ailure to exhaust [administrative remedies] is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff."

See Small, 728 F.3d at 268 (citations omitted); see also Jones, 549 U.S. at 216 ("We conclude

that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not

required to specifically plead or demonstrate exhaustion in their complaints.").  Nevertheless,

"where a prisoner's failure to exhaust under the PLRA is 'apparent from the face of the

complaint,' a district court may dismiss it on that basis."  See Talley v. Clark, 111 F.4th 255, 264

(3d Cir. 2024) (quoting Ray v. Kertes, 285 F.3d 287, 297 (3d Cir. 2002)).

Here, Defendants argue that the Court can consider Warden Briggs's affidavit because

"an [a]ffidavit addressing compliance with the [p]rison's grievance procedure is . . . a document

integral and relied upon for [sic] for the [c]omplaint."  See (Doc. No. 31 at 24).  They are

mistaken.  Warden Briggs's affidavit "is not an indisputably authentic document on which

[Pagan's] claim is based.  Thus, it cannot be considered in connection with the defendant's

12(b)(6) motion."  See Coutinho-Silva v. Ramirez, No. 17-cv-00378, 2017 WL 5588211, at *7

(M.D. Pa. Nov. 2, 2017), report and recommendation adopted, 2017 WL 5588179 (M.D. Pa.

Nov. 20, 2017); see also Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) ("The defendants in

this case attached several different kinds of documents to their motions to dismiss.  Some, like

the affidavits attached by the . . . defendants, clearly may not be considered at this stage."); Berry

v. Klem, 283 F. App'x 1, 4 (3d Cir. 2008) (unpublished) ("Even if the grievances, appeals, and

responses are indisputably authentic . . . the declarations are evidentiary materials that cannot be

considered on a motion to dismiss.").  If the Court were to consider Warden Briggs's affidavit,

the Court would have to convert this portion of Defendants' motion to dismiss into a motion for

summary judgment.  See Breeland v. Baker, 439 F. App'x 93, 94–95 (3d Cir. 2011) (unpublished)

(concluding that "[t]he District Court properly recognized that, in order to consider [the prison

grievance coordinator]'s verification [stating that the plaintiff had failed to exhaust

administrative remedies] along with the other grievance-related documents, the court would have to convert [defendant]'s Rule 12(b)(6) motion into one for summary judgment"); see also Greer v. Smith, 59 F. App'x 491, 492 (3d Cir. 2003) (unpublished) (determining that the district court erred in considering affidavit outside the pleadings to resolve defendant's Rule 12(b)(6) motion raising a failure to exhaust defense, without first converting the motion to dismiss into a motion for summary judgment and providing an opportunity for plaintiff to engage in discovery).

Since the Court cannot consider Warden Briggs's affidavit in ruling on Defendants' Rule 12(b)(6) motion to dismiss, the only way that the amended complaint could be dismissed for the failure to exhaust would be if it was obvious from the face of the amended complaint that Pagan failed to exhaust his administrative remedies. It is not obvious from the amended complaint that Pagan failed to exhaust his administrative remedies at DCP. Instead, Pagan's allegations in the amended complaint relating to grievances in general are his allegations that he filed grievances and his statement at the end of the amended complaint that he was submitting copies of certain grievances to the amended complaint (which he did not do). See (Doc. No. 18 at 8–9, 10, 11, 12). Additionally, Pagan does not include any allegations relating to the exhaustion of those grievances other than stating that he accepted the resolution of his first grievance against Morton insofar as he was informed that DCP's internal affairs unit would interview him about his complaint against her. See (id. at 9). Considering that Pagan did not attach this grievance to the amended complaint, this allegation could reasonably be interpreted that he obtained the relief he sought in the grievance. If so, he potentially would not have been required to file an appeal to fully exhaust. See Williams v. Dep't of Corr., 678 F. App'x 877, 881 (11th Cir. 2017) (unpublished) (concluding that PLRA did not require prisoner to appeal from prison granting relief to fully exhaust administrative remedies); see also Lyons v. U.S. Marshals, 840 F.2d 202,

205 (3d Cir. 1988) (explaining that exhaustion may be excused where it, <u>inter alia</u>, "would be futile").[7]  Overall, the Court finds that it is not definitively clear from the amended complaint that Pagan failed to fully exhaust his administrative remedies at DCP and, as such, the Court will deny Defendants' motion to dismiss based on the failure-to-exhaust defense.

The Court also declines to convert Defendants' motion to dismiss into a motion for summary judgment to allow the Court could consider the failure-to-exhaust defense at this time. <u>See</u> Fed. R. Civ. P. 12(d) (providing that "[i]f, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion").  Although Defendants have submitted Warden Briggs's affidavit, they have not submitted the DCP's grievance policy or copies of Pagan's grievances.  In addition, to the extent the Court grants Pagan leave to file a second amended complaint, converting Defendants' motion would unnecessarily delay this case when neither the Court nor Defendants know what Pagan will decide to include in a second amended complaint.  Accordingly, the Court will exercise its discretion and decline to convert this part of Defendants' motion to dismiss into a motion for summary judgment.  <u>See</u> <u>Escalera v. Harry</u>, No. 15-cv-02132, 2016 WL 6694502, at *7 (M.D. Pa. Sept. 28, 2016) (indicating that court has discretion to decide whether to convert motion to dismiss into a motion for summary judgment, recommending that motion to dismiss not be converted into a motion for summary judgment, and providing detailed explanation in support of recommendation), <u>report and</u>

---

[7]  Defendants do not discuss this issue in their brief in support of their motion to dismiss or explain how the DCP grievance policy would have required Pagan to file an appeal in this situation, other than to state that the policy has four (4) steps.

recommendation adopted, 2016 WL 6582065 (M.D. Pa. Nov. 7, 2016); see also Yuratovich v.

U.S. Dep't of Just., No. 13-cv-05651, 2015 WL 8328328, at *3 (D.N.J. Dec. 8, 2015) (stating

that if defendant presents documents outside the pleadings in connection with a Rule 12(b)(6)

motion to dismiss, the "Court has discretion to either convert the motion to dismiss into a motion

for summary judgment, or to ignore the matters presented outside the pleadings and continue to

treat the filing as a motion to dismiss").[8]

### E.    Leave to Amend

Having determined that Pagan's Section 1983 claims, other than his Eighth Amendment

failure-to-protect claim against Morton based on events which allegedly occurred in February

2024, are subject to dismissal, the Court must determine whether to grant him leave to file a

second amended complaint.  Courts should generally give leave to amend but may dismiss a

complaint with prejudice where leave to amend would be inequitable or futile.  See Fletcher-

---

[8] Despite the Court's denial of Defendants' motion to dismiss based on the failure to exhaust, the Court observes two (2) things.  First, regarding Warden Briggs's affidavit, he indicates that Pagan's grievance relating to Morton allegedly sending two (2) inmates with messages for him was determined not to be grievable.  See (Doc. No. 30-3 ¶ 14).  Given that the Court lacks information about the provisions of DCP's grievance process or the grievance itself, the Court could not conclude that Pagan failed to exhaust this claim even if the Court considered Warden Briggs's affidavit here.  See, e.g., Barnwell v. Williams, No. 20-cv-07799, 2024 WL 4367688, at *4 (N.D. Ill. Oct. 1, 2024) (concluding that prison officials informing prisoner-plaintiff that their concerns were not grievable prevented plaintiff from continuing with the grievance process and, as such, made grievance process unavailable).

Second, Pagan appears to have submitted a copy of the grievance he filed relating to Morton's alleged conduct on September 18, 2023.  See (Doc. No. 10-1 at 6).  In the grievance, the relief Pagan requested was for charges to be filed against Morton.  See (id.).  Depending on the language used in the DCP's grievance policy, Pagan could be procedurally defaulted from seeking monetary compensation on his Section 1983 claim against her pertaining to her alleged conduct on September 18, 2023.  See, e.g., Spruill, 372 F.3d at 233 (explaining that the court "must look to the rules governing the prison's grievance system to ascertain whether [a prisoner] has procedurally defaulted [their] claim for monetary relief" by failing to request such relief in their grievance).

Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); see also Grayson, 293 F.3d at 108 ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile.").  "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

Based on the Court's analysis above, the Court will grant Pagan leave to amend his Section 1983 official- and individual-capacity claims for monetary damages asserted against Defendants.  Concerning his Section 1983 claims against Morton, the Court will also grant him leave to amend his First Amendment retaliation, Eighth Amendment failure-to-protect claim based on the alleged events of September 18, 2023, and Fourteenth Amendment equal-protection claim against her, because the Court cannot conclusively state at this time that any amendment would be futile.  Regarding his claims against Sauble, because it is unclear from the amended complaint that Pagan intends to assert a Fourteenth Amendment equal-protection claim against Sauble, the Court will grant him leave to amend to the extent he intended to assert such a claim against him.  However, the Court will not grant him leave to reassert his claims for any potential Eighth Amendment violation as well as any Fourteenth Amendment substantive-due-process violation because any amendment would be futile.

F.       **Pagan's Motion for Appointment of Counsel**

Pagan moves for the appointment of counsel in this matter (Doc. No. 39), which is the second time he has sought the appointment of counsel (Doc. No. 8).  As the Court previously explained, civil litigants such as Pagan have no constitutional or statutory right to the appointment of counsel; nevertheless, district courts have broad discretionary power to request appointed counsel for such litigants who cannot afford counsel.  See 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel."); Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002) (citations omitted).  District courts follow a two (2)-step process when deciding whether to request appointed counsel to represent an indigent civil litigant.  See Houser v. Folino, 927 F.3d 693, 697 (3d Cir. 2019).  First, as a threshold inquiry, the court must consider whether the plaintiff's case has some arguable merit in fact and law.  See Montgomery, 294 F.3d at 498–99 (citations omitted). Second, if the court determines that the plaintiff's case has some arguable merit in fact and law, then the court is to consider other factors, including: (1) the plaintiff's ability to present their own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be required and the plaintiff's ability to pursue such an investigation; (4) the extent to which the case is likely to turn on credibility determinations; (5) whether expert testimony will be required; and (6) whether the plaintiff can retain and afford counsel.  See Houser, 927 F.3d at 697 (citations omitted).  This list, however, "is not meant to be exhaustive."  See Tabron v. Grace, 6 F.3d 147, 157 (3d Cir. 1993); see also Houser, 927 F.3d at 700 (stating that "[w]e have always emphasized that [these] factors are only a guidepost for district courts in their exercise of the broad statutory discretion granted to them by Congress[,]" and that "[t]hey are not exhaustive, nor are they each always

essential").  Rather, the court must determine on a case-by-case basis whether a request for appointed counsel is warranted.  See Tabron, 6 F.3d at 157–58.

As noted above, the threshold question relating to Pagan's motion for appointment of counsel is whether his Section 1983 claims have "some arguable merit in fact and law."  See Montgomery, 294 F.3d at 498–99.  Pagan does not specifically address this threshold question in his motion other than to state his belief that "[t]his case appears to be meritorias [sic]."  See (Doc. 39 at 1).  Nevertheless, as indicated above, the Court has determined that Pagan has stated a plausible Eighth Amendment failure-to-protect claim against Morton based on events alleged to have occurred in February 2024.  Because this claim has some arguable merit in fact and law, the Court will now consider the above-referenced factors.

The first of those factors is Pagan's ability to present his own case.  This factor weighs against appointing counsel because Pagan's filings so far, including his motion for appointment of counsel, indicate not only that he is literate and articulate, but that he also can present his case and his legal arguments to the Court.  Even though the Court pointed out that his piecemeal approach for submitting facts and legal claims was improper, he has been able to set forth his factual allegations and legal claims in a comprehensible manner.

Regarding the second factor, this factor also weighs against appointing counsel because Pagan's claims are not complicated.  This is not a medical malpractice or negligence claim where there could be complex issues pertaining to causation.  See Rodriguez v. United States, No. 3:14-cv-01149, 2016 WL 1255290, at *5 (M.D. Pa. Mar. 28, 2016) (explaining that "medical malpractice claims or negligence claims based on a medical injury[] often involve complex issues pertaining to causation").  Instead, the law surrounding his failure-to-protect claims as

well as his other constitutional claims asserted in the amended complaint do not present novel or complex issues of law.

As for the third factor, since it is unclear at this stage which of Pagan's claims will proceed to discovery, the Court cannot determine how much factual investigation will be required, even though the Court recognizes that Pagan's incarceration at a correctional institution other than DCP could conceivably make any factual investigation more difficult. Thus, this factor is neutral.

For the fourth factor, the extent to which the case is likely to turn on credibility determinations, this does appear to be a case where credibility determinations could be critical as the Court presumes that Morton will deny Pagan's allegation that she sent two (2) inmates to fight him. To the extent that Pagan can amend his amended complaint (as discussed below) to allege a plausible claim against Morton pertaining to the September 18, 2023 fight, he has already acknowledged that Morton denied making the alleged statement or otherwise discriminating against Hispanics. See (Doc. No. 18 at 9). Overall, this factor weighs in favor of appointing counsel.

Regarding the fifth factor, it does not appear that expert testimony will be required. Therefore, this factor weighs against appointing counsel. Finally, as to the sixth factor, presuming that Pagan's financial circumstances have not changed since he filed this action, it appears that Pagan is unable to afford counsel. See (Doc. No. 3). However, the extent of Pagan's efforts to retain counsel so far are unclear because he appears to have attempted to secure counsel only once, almost a year after he filed this case. See (Doc. No. 39-1). Nonetheless, it appears that this factor would weigh in favor of appointment of counsel.

Based on the Court's consideration of the above factors, the Court does not find that Pagan will be prejudiced by prosecuting this case on his own. The Court's duty to construe pro se pleadings liberally, along with Pagan's apparent ability to litigate this action, militate against the appointment of counsel. Accordingly, Pagan's motion for appointment of counsel will be denied. However, this denial will be without prejudice. <u>See</u> <u>Tabron</u>, 6 F.3d at 156–57 ("[A]ppointment of counsel under § 1915(d) may be made at any point in the litigation and may be made by the district court sua sponte . . . even if it does not appear until trial (or immediately before trial) that an indigent litigant is not capable of trying his or her case, the district court should consider appointment of counsel at that point."). If future proceedings demonstrate the need for counsel, the matter of whether counsel should be appointed may be reconsidered either <u>sua</u> <u>sponte</u> or upon Pagan's motion.

## IV.    CONCLUSION

For the reasons stated above, the Court will (1) deny Defendants' motions to strike or dismiss Pagan's documents in which he appeared to identify claims or assert factual allegations through submissions that do not qualify as amended complaints, (2) construe Pagan's June 2024 letters as motions to amend or supplement his amended complaint and deem them withdrawn for his failure to file supporting briefs, (3) deny in part and grant in part Defendants' motion to dismiss, (4) deny without prejudice Pagan's motion for appointment of counsel, (5) dismiss Pagan's Section 1983 official- and individual-capacity claims for monetary damages against Defendants, his Section 1983 Fourteenth Amendment equal-protection claims, and his First Amendment retaliation claim against Morton, pursuant to the Court's screening authority under

Section 1915(e)(2)(B), and (6) permit Pagan leave to file a second amended complaint as to only the claims described above.  An appropriate Order follows.[9]


                                        s/ Yvette Kane_____
                                        Yvette Kane, District Judge
                                        United States District Court
                                        Middle District of Pennsylvania

---

[9]  The Order will provide additional information to Pagan about the filing of a second amended complaint.